IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRIAN CLONINGER,<br>    ID # 02007915,<br>        Petitioner, | §<br>§<br>§<br>§ | |
| v. | § | No. 3:23-CV-772-E-BW |
| | § | |
| DIRECTOR, TDCJ-CID,<br>        Respondent. | §<br>§<br>§ | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Petition for a Writ of Habeas Corpus by a Person in

State Custody, filed on April 11, 2023.  (Dkt. No. 1.)  Based on the relevant filings

and applicable law, the Court should **DENY** the petition with prejudice.

## I.  BACKGROUND

Brian Cloninger, an inmate of the Texas Department of Criminal Justice,

Correctional Institutions Division ("TDCJ-CID"), filed a counseled habeas corpus

petition under 28 U.S.C. § 2254 challenging a 2015 conviction and 45-year sentence

in Dallas County, Texas.  (*See* Dkt. No. 1 at 2.)[2]  The respondent is the Director of

TDCJ-CID ("State").  (*See id.* at 1.)

---

[1] By Special Order No. 3-251, this habeas case has been automatically referred for full case management.  By Special Order No. 3-354, it was transferred and reassigned to the undersigned on August 23, 2024.  (*See* Dkt. No. 21.)

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

### A.  State Court Proceedings

A Dallas County grand jury indicted Cloninger in Cause No. F13-59896-V on one count of serious bodily injury to a child 14 years of age or younger with a deadly weapon.  (*See* Dkt. No. 18-1 at 4-6); *State v. Cloninger*, No. F13-59896-V (292nd Jud. Dist. Ct., Dallas Cnty., Tex. June 19, 2015).  He pled nolo contendere—or no contest—to the charge, waived a jury trial, and proceeded to a bench trial where the state trial court found him guilty as charged and sentenced him to 45 years of imprisonment.  (*See* Dkt. No. 18-1 at 7-10.)  The Texas Fifth District Court of Appeals affirmed the judgment on direct appeal.  (*See id.* at 11); *Cloninger v. State*, No. 05-15-01234-CR, 2017 WL 908788 (Tex. App.—Dallas Mar. 8, 2017, pet. ref'd).  The Texas Court of Criminal Appeals ("TCCA") refused Cloninger's petition for discretionary review.  (*See* Dkt. No. 17-25); *Cloninger v. State*, No. PD-0315-17 (Tex. Crim. App. May 24, 2017).

Cloninger's first state habeas application, filed in the state habeas court on February 12, 2018, was dismissed by the TCCA without written order on Cloninger's motion to withdraw the application.  (*See* Dkt. No. 17-26 at 18-35; Dkt. Nos. 17-27, 17-28); *Ex parte Cloninger*, No. WR-88,260-01 (Tex. Crim. App. Apr. 18, 2018).  He filed his second state habeas application in the state trial court on July 9, 2018.  (*See* Dkt. No. 18-1 at 12-29.)  On remand from the TCCA, the state habeas court conducted an evidentiary hearing on the claims raised in Cloninger's second state habeas application.  (*See* Dkt. Nos. 18-8, 18-9.)  Cloninger and his state trial counsel

testified at the evidentiary hearing. (*See* Dkt. No. 18-9 at 5-72.) Following the hearing, the state habeas court issued findings of fact and conclusions of law recommending that the application be denied. (*See* Dkt. No. 18-16 at 43-57.) Cloninger filed objections to the state habeas court's recommendation. (*See id.* at 58-67.) On December 21, 2022, the TCCA denied Cloninger's second state habeas application without written order on the findings of the state habeas court after a hearing and on the TCCA's independent review of the record. (*See* Dkt. No. 18-19); *Ex parte Cloninger*, No. WR-88,260-02 (Tex. Crim. App. Dec. 21, 2022).

## B. Substantive Claims

In his § 2254 petition, Cloninger asserts two grounds for relief:

(1) Petitioner's no contest plea was not know[]ingly, voluntarily or intelligently made in violation of Due Process; and

(2) Petitioner received ineffective assistance of counsel because trial counsel misrepresented what a no contest plea meant and did not correct the Court's misrepresentation.

(Dkt. No. 1 at 6.) The State filed a response on January 12, 2024. (*See* Dkt. No. 15.) Cloninger did not file a reply.

## II. APPLICABLE LAW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") substantially changed the way federal courts handle habeas corpus actions by, in part, imposing a re-litigation bar to obtaining relief. *See, e.g.*, *Neal v. Vannoy*, 78 F.4th 775, 782 (5th Cir. 2023) (citations omitted). Under the AEDPA, a state prisoner may not obtain federal habeas relief

3

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). A state habeas application that is denied without written order by the TCCA is an adjudication on the merits for purposes of § 2254. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" standard, a court may grant habeas relief "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Id.* at 413. The "unreasonable application" inquiry is an objective one, rather than a subjective one. *See id.* at 409.

Section 2254(d)(2) concerns questions of fact. *See Martin*, 246 F.3d at 475. Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both express and implied factual findings. *See Ford v. Davis*, 910 F.3d 232, 234-35 (5th Cir. 2018).

Section 2254 thus creates a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation and quotation marks omitted). This highly deferential standard applies even when a state habeas application is summarily denied without written order. *See Harrington*, 562 U.S. at 103. In the absence of a reasoned state court decision, a court "'must determine what arguments or theories . . . could have supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court.'" *Sexton v. Beaudreaux*, 585 U.S. 961, 965 (2018) (quoting *Richter*, 562 U.S. at 102). To overcome this standard, a petitioner "must show that the state

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.  Failure to make this showing precludes federal habeas relief.  *See id.* at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III.  INVOLUNTARINESS OF PLEA

In his first ground, Cloninger contends that his plea of no contest to the offense of conviction was not knowingly, voluntarily, and intelligently made.  (*See* Dkt. No. 1 at 6; Dkt. No. 4 at 9, 11.)

A federal court will uphold a guilty plea challenged in a habeas proceeding if the plea was knowing, voluntary, and intelligent.  *See Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985).  "This requires that the defendant understand the nature of the charges against him, the consequences of his plea, and the nature of the constitutional protection that he is waiving." *United States v. Strother*, 977 F.3d 438, 445 (5th Cir. 2020).  The critical issue in determining whether a plea is voluntary and intelligent "is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.3d 325, 329 (5th Cir. 1991).  An understanding of the consequences of a guilty plea means that the defendant knows "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 417 (5th Cir. 2002).

Here, Cloninger argues that "his no-contest plea was involuntary when it was induced by a misrepresentation regarding the meaning of a no-contest plea, the burden of proof the State must meet for a conviction, and the failure to advise Cloninger regarding the effect a no contest plea would have on appellate review if convicted." (Dkt. No. 4 at 13; *see also* Dkt. No. 1 at 6.)  He states that he "was told that by pleading no contest he was not admitting to the elements [of the offense] and that the Court would require the State to prove the case beyond a reasonable doubt." (Dkt. No. 1 at 6.)  According to Cloninger, he "wanted to be sure he was not admitting to the elements of the offense by a no contest plea." (*Id.*)

Cloninger raised this claim in his second state habeas application.  (*See* Dkt. No. 18-1 at 17.)  In recommending denial of the claim, the state habeas court considered admonishments given to Cloninger during the criminal proceedings, Cloninger's responses thereto, and the testimony of Cloninger and his state trial counsel at the state habeas evidentiary hearing.  (*See* Dkt. No. 18-16 at 44-50.)  Concluding that Cloninger failed to prove that his plea was involuntary, the state habeas court found, in part, that Cloninger "was repeatedly admonished of his rights and options for disposing of this case," and that he "pleaded no contest in a trial before the court to avail himself of the opportunity to be found not guilty, found guilty of a lesser included offense, or if the Court found the evidence sufficient to prove guilt, to be placed on deferred adjudication probation." (*Id.* at 51; *see also id.* at 56.)  The TCCA denied the claim when it denied the second state habeas application

on the state habeas court's findings with a hearing and on its independent review of the record.  (*See* Dkt. No. 18-19.)

The record on which the state habeas court relied shows that when Cloninger pled no contest to the charged offense, he was informed about and confirmed his understanding of the range of punishment for the charged offense.  (*See* Dkt. No. 17-10 at 7-8.)  The state trial court also admonished him about his rights to a jury trial and the state trial court's options in the event Cloninger pled no contest; it admonished him that it would not treat a no contest plea as an admission of guilt, and that it would require the State to prove his guilt beyond a reasonable doubt at trial.  (*See id.*; Dkt. No. 17-9 at 4-10; Dkt. No. 18-16 at 44-47.)

At the state habeas evidentiary hearing, state trial counsel testified that he "explained to [Cloninger] that a no contest plea would prove-up or substantiate the State's claims but that 'it left a lot more options open to the Court because I think he and I both believed that they were going to prove that he shot the child.'"  (Dkt. No. 18-16 at 48; Dkt. No. 18-9 at 27; *see also* Dkt. No. 18-9 at 23-25.)  Regarding the impact of a no contest plea on Cloninger's appellate rights, state trial counsel also testified that his explanation to Cloninger "was that this [no contest plea] is really going to limit any appellate rights that we had—that he had.  That it was going to substantially hamper him in [appealing]."   (Dkt. No. 18-9 at 28; *see also id.* at 27-30; Dkt. No. 18-16 at 48.)

In contrast, Cloninger testified that state trial counsel told him that if he pled no contest, "it's just a technicality which will allow us to have the ability to get

probation if [the state trial court] finds you guilty.  But he kept telling me nothing else was different [from a not guilty plea]." (Dkt. No 18-9 at 64; Dkt. No. 18-16 at 49.) He denied that state trial counsel explained to him "that the legal effect of a no contest plea was basically you admitting all of the elements of the offense," and stated that he did not learn about the legal effect of a no contest plea until after he was in the TDCJ-CID.  (Dkt. No. 18-9 at 65-66; Dkt. No. 18-16 at 49.)  He testified that he did not remember state trial counsel saying anything about the effect of a no contest plea on his appellate position or rights and subsequently testified that "nobody said anything about it," despite state appellate counsel's presence throughout the trial.  (Dkt. No. 18-9 at 65-66; *see also* Dkt. No. 18-16 at 50.)  He averred that he "would have never considered [a no contest plea]" if he had been advised of its legal meaning because he "was trying to be found not guilty by the truth of what happened that day," not to "mitigate punishment." (Dkt. No. 18-9 at 66; *see also* Dkt. No. 18-16 at 50.)

In rejecting Cloninger's claim that his no contest plea was involuntary, the state habeas court made an implicit credibility determination in favor of state trial counsel's testimony that he explained the legal effect of a no contest plea to Cloninger, including its impact on the standard of review on appeal.  The state habeas court's implicit credibility findings on this subject are presumptively correct under § 2254(e)(1).  *See Ford*, 910 F.3d at 234-35.  Cloninger has not provided clear and convincing evidence to rebut the presumption of correctness accorded the state habeas court's implied factual findings underlying its conclusion on the voluntariness

of his no contest plea. On this record, Cloninger fails to show that the TCCA's denial of this claim was unreasonable or contrary to clearly established federal law. Accordingly, the Court should deny the claim.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his second ground, Cloninger contends that his state trial counsel rendered ineffective assistance in connection with Cloninger's no contest plea. (*See* Dkt. No. 1 at 6; Dkt. No. 4 at 9.) Because Cloninger raised this ground in his § 2254 petition independently of his involuntary plea claim, the Court addresses it separately.[3] (*See id.*)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either of these two prongs of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

---

[3] To the extent this ground merely recharacterizes or is encompassed by Cloninger's first ground for relief, it fails and does not merit § 2254 relief for the same reasons the Court discussed in connection with that ground.

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams*, 529 U.S. at 393 n.17 (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair"). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

When a claim of ineffective assistance of counsel is adjudicated on the merits by the state habeas court, the federal court's review of the claim is conducted under the "doubly deferential" standards of both *Strickland* and 28 U.S.C. § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *see also Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017). As such, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but rather, "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101.

Here, according to Cloninger, state trial counsel "knew that [Cloninger] did not wish to admit guilt to anything." (Dkt. No. 1 at 6.) He complains that state trial counsel "advised [him] to enter a plea of no contest and did not correct the trial court when the judge told [Cloninger] no contest was not an admission of guilt, trial court would hold State to proving its case beyond a reasonable doubt, and did not tell [Cloninger] that no contest plea had same legal effect as a guilty plea which would lower the standard of review on appeal if convicted." (*Id.*)

Cloninger raised this claim in his second state habeas application in the context of challenging the voluntariness of his no contest plea. (*See* Dkt. No. 18-1 at 19-20.) In determining whether state trial counsel was constitutionally ineffective because he provided erroneous advice rendering Cloninger's no contest plea involuntary, the state habeas court concluded, after an evidentiary hearing, that Cloninger failed to establish that his plea was involuntary due to the ineffective assistance of state trial counsel. (*See* Dkt. No. 18-16 at 43, 51, 56.) The TCCA rejected the claim when it denied the second state habeas application without order on the state habeas court's findings with a hearing and on its independent review of the record. (*See* Dkt. No. 18-19.)

As the Court has explained, the state habeas record shows that state trial counsel testified at an evidentiary hearing that he explained to Cloninger that a no contest plea would substantiate or prove up the State's claims and would severely limit Cloninger's appellate positioning and rights. (*See* Dkt. No. 18-9 at 23-25, 27-29.) Cloninger testified to the contrary. (*See id.* at 64-66.) State trial counsel also

12

testified at the evidentiary hearing that the no contest plea left more sentencing options available to the state trial court, and that his goal was to have Cloninger found not guilty on the basis of involuntary intoxication. (*See* Dkt. No. 18-9 at 26, 45-46; Dkt. No. 18-16 at 48.) Additionally, the state trial court admonished Cloninger at separate pre-trial hearings that it would not treat his no contest plea as an admission of guilt and would require the State to prove his guilt beyond a reasonable doubt at trial. (*See* Dkt. No. 17-9 at 4-10; Dkt. No. 17-10 at 8; Dkt. No. 18-16 at 46-47, 51.)

Given this record, it was reasonable for the state habeas court to implicitly credit state trial counsel's testimony over that of Cloninger as to what state trial counsel communicated to him about the meaning and consequences of a no contest plea. The state habeas court was also reasonable when it made an implicit credibility determination in favor of state trial counsel's testimony regarding the goal behind and purpose of Cloninger's no contest plea, finding that Cloninger so pled "to avail himself of the opportunity to be found not guilty, found guilty of a lesser included offense, or if the Court found the evidence sufficient to prove guilt, to be placed on deferred adjudication probation." (Dkt. No. 18-16 at 51; *see also id.* at 48-50.) The state habeas court's implicit findings are presumed correct in the absence of clear and convincing evidence in rebuttal, as is the case here, and the Court defers to them. *See Ford*, 910 F.3d at 234-35.

Applying these presumptively correct findings to the *Strickland* analysis, the state habeas court reasonably could have concluded that state trial counsel's

performance was not deficient when he advised Cloninger regarding the meaning and effect of a no contest plea and when he did not challenge the state trial court's decision to not treat Cloninger's no contest plea as an admission of guilt and to hold the State to prove Cloninger's guilt beyond a reasonable doubt at trial.[4]   It also reasonably could have concluded that Cloninger failed to show a reasonable probability of resulting prejudice under the second prong of *Strickland*, i.e., that he would not have pled no contest and would have pled not guilty and proceeded to trial absent state trial counsel's alleged deficiencies.  *See Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985).  Indeed, the state habeas court implicitly found that Cloninger's hearing testimony regarding how he would have pled absent counsel's alleged deficiencies was not credible when it concluded that he was not entitled to habeas relief.  (*See* Dkt. No. 18-9 at 66-67; Dkt. No. 18-16 at 50-51, 56.)

Accordingly, Cloninger has failed to show that the TCCA's rejection of his claim of ineffective assistance of counsel was unreasonable under the doubly

---

[4] Cloninger did not argue in the underlying state criminal or habeas proceedings that the state trial court failed to conduct the trial as it admonished, and the record shows that despite his no contest plea, Cloninger was permitted to contest his guilt of the charged offense at trial, and the State called 19 witnesses at trial to carry its burden of proof.  *See, e.g.*, *Jones v. State*, No. 05-20-00476-CR, 2022 WL 17750551, at *3 (Tex. App.—Dallas Dec. 19, 2022, pet. ref'd) (recognizing that the defendant "was given many  of the benefits of a 'not guilty' plea," despite his no contest plea, where the trial court permitted him to contest his guilt and held the State to show guilt beyond a reasonable doubt); *Flores-Alonzo v. State*, 460 S.W.3d 197, 201-02 & n.2 (Tex. App.—Texarkana Mar. 13, 2015, no pet.) (recognizing in context of a no contest plea that "although it does not bind the State to a higher burden of proof on appeal, the trial court essentially required the State to present more evidence than was legally required to satisfy it that [the defendant] was, in fact, guilty.").

14

deferential standard applicable to the claim.  *See Richter*, 562 U.S. at 105.  The Court therefore should deny the claim.

## V.  ACTUAL INNOCENCE

In his brief in support of the § 2254 petition, and citing a Fifth Circuit panel decision that has since been vacated on rehearing en banc, Cloninger "concludes this memorandum with an assertion or colorable claim that he is innocent."  (Dkt. No. 4 at 27.)

A standalone claim of actual innocence is not a cognizable ground for federal habeas relief.  *See Herrera v. Collins*, 506 U.S. 390, 400-01 (1993); *Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018).  Even if a "truly persuasive" showing of actual innocence could merit federal habeas relief, the threshold to such relief would be "extraordinarily high."  *Herrera*, 506 U.S. at 417.

Here, Cloninger does not allege any facts or provide any evidence to support his claim of innocence.  His conclusory "assertion or colorable claim that he is innocent" is insufficient to merit § 2254 relief.  (Dkt. No. 4 at 27); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition [ ], unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").  Accordingly, even if the Court assumes that this conclusory and unsubstantiated claim has been properly exhausted and is not otherwise barred from federal habeas review, it is without merit, and the Court should deny it.

## VI.  EVIDENTIARY HEARING

Cloninger requests an evidentiary hearing on his claims.  (*See* Dkt. No. 4 at 5.)

Upon review of the pleadings and the proceedings held in state court as reflected in

the state court records, an evidentiary hearing appears unnecessary, and Cloninger

has not shown he is entitled to an evidentiary hearing before this Court on his claims.

## VII.  RECOMMENDATION

The Court should **DENY** the Petition for a Writ of Habeas Corpus by a

Person in State Custody, filed on April 11, 2023 (Dkt. No. 1), with prejudice.

**SO RECOMMENDED** on March 18, 2026.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

16